

1

2

3

4

5

6

7

8                        **UNITED STATES DISTRICT COURT**

9                        **CENTRAL DISTRICT OF CALIFORNIA**

10                       **SOUTHERN DIVISION**

11

12   LAURIE AREVALO,                        )      No. SA CV 12-895-PLA
                                            )
13                   Plaintiff,             )
                                            )
14            v.                            )      **MEMORANDUM OPINION AND ORDER**
                                            )
15   CAROLYN W. COLVIN,                     )
     ACTING COMMISSIONER OF SOCIAL          )
16   SECURITY ADMINISTRATION,               )
                                            )
17                   Defendant.             )
     _____       )

18

19                                  **I.**

20                          **PROCEEDINGS**

21          Plaintiff filed this action on June 6, 2012, seeking review of the Commissioner's denial of

22   her application for Disability Insurance Benefits.  The parties filed Consents to proceed before the

23   undersigned Magistrate Judge on June 8, 2012, and July 5, 2012.  Pursuant to the Court's Order,

24   the parties filed a Joint Stipulation on January 31, 2013, that addresses their positions concerning

25   the disputed issues in the case.  The Court has taken the Joint Stipulation under submission

26   without oral argument.

27   /

28   /

## II.

## BACKGROUND

Plaintiff was born on December 11, 1956.  [Administrative Record ("AR") at 61.]  She has a high school education [AR at 144] and past relevant work experience as a secretary.  [AR at 141-42.]

On May 6, 2009, plaintiff filed her application for Disability Insurance Benefits, alleging that she has been unable to work since April 30, 2004, due to fibromyalgia, fatigue, depression, back problems, cholesterol problems, and plantar fasciitis, among other things.  [AR at 61-67, 122-28, 139-46, 162-71, 198-205.]  After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 63-78.]  A hearing was held on December 9, 2010, at which time plaintiff appeared with counsel and testified on her own behalf.  A medical expert and a vocational expert also testified.  [AR at 31-60.]  On January 4, 2011, the ALJ determined that plaintiff was not disabled.  [AR at 16-30.]  On April 16, 2012, the Appeals Council denied plaintiff's request for review.  [AR at 1-5.]  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

1  must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,

2  53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

3

4                                            IV.

5                          THE EVALUATION OF DISABILITY

6        Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

7  to engage in any substantial gainful activity owing to a physical or mental impairment that is

8  expected to result in death or which has lasted or is expected to last for a continuous period of at

9  least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

10

11  A.      THE FIVE-STEP EVALUATION PROCESS

12       The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

13  whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

14  828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

15  determine whether the claimant is currently engaged in substantial gainful activity; if so, the

16  claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

17  substantial gainful activity, the second step requires the Commissioner to determine whether the

18  claimant has a "severe" impairment or combination of impairments significantly limiting her ability

19  to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

20  If the claimant has a "severe" impairment or combination of impairments, the third step requires

21  the Commissioner to determine whether the impairment or combination of impairments meets or

22  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

23  Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

24  If the claimant's impairment or combination of impairments does not meet or equal an impairment

25  in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

26  sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

27  and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to

28  perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a

1  prima facie case of disability is established.  The Commissioner then bears the burden of

2  establishing that the claimant is not disabled, because she can perform other substantial gainful

3  work available in the national economy.  The determination of this issue comprises the fifth and

4  final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828

5  n.5; Drouin, 966 F.2d at 1257.

6

7  **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

8          In this case, at step one, the ALJ concluded that plaintiff has not engaged in substantial

9  gainful activity during the period from her alleged disability onset date, April 30, 2004, through her

10  date last insured of December 31, 2009. [AR at 18.]  At step two, the ALJ concluded that plaintiff

11  has the severe impairments of fibromyalgia, disc protrusion of the lumbar region of the spine, and

12  right and left shoulder arthritis. [Id.]  At step three, the ALJ determined that through the date last

13  insured, plaintiff did not have an impairment or a combination of impairments that met or medically

14  equaled any of the impairments in the Listing. [AR at 20.]  The ALJ further found that plaintiff

15  retains the residual functional capacity ("RFC")[1] to perform "light work" as defined in 20 C.F.R. §

16  404.1567(b).[2]  Specifically, the ALJ found that plaintiff can occasionally lift and/or carry 20 pounds

17  and frequently lift and/or carry 10 pounds; occasionally reach above shoulder level bilaterally; sit

18  eight hours out of an eight-hour workday and stand and/or walk six hours out of an eight-hour

19  workday, with the limitation that she "must be able to change positions every hour for one to three

20  minutes"; and occasionally climb stairs, bend, balance, stoop, kneel, crouch, or crawl.  However,

21  the ALJ also found that plaintiff can never climb ladders, ropes, or scaffolds. [Id.]  At step four, the

22  ALJ concluded that plaintiff is capable of performing her past relevant work as an administrative

23

24  _____

25  [1]   RFC is what a claimant can still do despite existing exertional and nonexertional
limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

26
[2]   20 C.F.R. § 404.1567(b) defines "light work" as work involving "lifting no more than 20 pounds
27  at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a
good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm
28  or leg controls."

1  clerk.  [AR at 24.]  Accordingly, the ALJ determined that plaintiff was not under a disability at any

2  time from April 30, 2004, through December 31, 2009, her date last insured.  [AR at 25.]

3

4  **V.**

5  **THE ALJ'S DECISION**

6  Plaintiff contends that the ALJ improperly: (1) determined that plaintiff does not have a

7  severe mental impairment, and that her alleged impairments of pulmonic insufficiency and plantar

8  fasciitis are not "severe"; (2) rejected plaintiff's treating physicians' opinions; (3) failed to discuss

9  the opinion of a licensed clinical social worker; and (4) discounted plaintiff's credibility.  [Joint

10  Stipulation ("JS") at 2.]  As set forth below, the Court agrees with plaintiff and remands the matter

11  for further proceedings.

12

13  **A.    STEP-TWO ANALYSIS**

14  A "severe" impairment, or combination of impairments, is defined as one that significantly

15  limits physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520, 416.920.  "The

16  Supreme Court has recognized that including a severity inquiry at the second stage of the

17  evaluation process permits the [Commissioner] to identify efficiently those claimants whose

18  impairments are so slight that they are unlikely to be found disabled even if the individual's age,

19  education, and experience are considered."  Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994)

20  (citing Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987)).

21  However, an overly stringent application of the severity requirement would violate the statute by

22  denying benefits to claimants who meet the statutory definition of "disabled."  Corrao, 20 F.3d at

23  949 (citing Bowen v. Yuckert, 482 U.S. at 156-58).  Despite use of the term "severe," most

24  circuits, including the Ninth Circuit, have held that "the step-two inquiry is a de minimis screening

25  device to dispose of groundless claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)

26  (citing Bowen v. Yuckert, 482 U.S. at 153-54); see Hawkins v. Chater, 113 F.3d 1162, 1169 (10th

27  Cir. 1997) ("A claimant's showing at level two that he or she has a severe impairment has been

28  described as 'de minimis'"); see also Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989)

1  (evaluation can stop at step two only when there is no more than minimal effect on ability to
2  work).

3       An impairment or combination of impairments should be found to be "non-severe" only
4  when the evidence establishes merely a slight abnormality that has no more than a minimal effect
5  on an individual's physical or mental ability to do basic work activities.  See Corrao, 20 F.3d at
6  949 (citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)); see also 20 C.F.R. §§
7  404.1521(a), 416.921(a).  "Basic work activities" mean the abilities and aptitudes necessary to
8  do most jobs, including "physical functions ...," "[u]nderstanding, carrying out, and remembering
9  simple instructions," "[u]se of judgment," "[r]esponding appropriately to supervision, co-workers
10  and usual work situations," and "[d]ealing with changes in a routine work setting."  20 C.F.R. §§
11  404.1521(b), 416.921(b).

12       *1.   Severe Mental Impairment*

13       Plaintiff contends that the ALJ erred by finding that plaintiff does not have a severe mental
14  impairment, and specifically that the ALJ reached this conclusion by improperly relying on the
15  opinion of non-examining physician Dr. P.M. Balson over the opinions of examining physicians Dr.
16  Ernest A. Bagner and Dr. Gale J. Shuler.  [JS at 9-14.]

17       In assessing the severity of plaintiff's alleged mental impairment, the ALJ was required to
18  reflect in the decision his consideration of plaintiff's mental functional limitations under four broad
19  criteria (also known as the "paragraph B criteria"): (1) activities of daily living; (2) social functioning;
20  (3) concentration, persistence, or pace; and (4) episodes of decompensation.  See 20 C.F.R., Pt.
21  404, Subpt. P, App. 1, §12.00C; see also 20 C.F.R. §§ 404.1520a, 416.920a.  If a claimant is rated
22  as having greater than "mild" limitations in any of the first three criteria or more than no episodes
23  of decompensation in criteria four, or if "the evidence otherwise indicates that there is more than
24  a minimal limitation in [the claimant's] ability to do basic work activities," then the claimant's mental
25  impairment should be found to be "severe." 20 C.F.R. §§ 404.1520a, 416.920a; see also 20 C.F.R.
26  §§ 404.1521, 416.921.

27       In evaluating medical opinions, the case law and regulations distinguish among the opinions
28  of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who

6

examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).  See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830.  "The opinion of an examining physician is ... entitled to greater weight than the opinion of a nonexamining physician."  Lester, 81 F.3d at 830. The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons supported by substantial evidence in the record to reject the contradicted opinion of an examining physician.  See id. at 830-31.  The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).  The ALJ "must set forth his own interpretations and explain why they, rather than the [examining] doctors', are correct." Id.

On July 23, 2009, Dr. Ernest A. Bagner performed a mental status examination of plaintiff. [AR at 513-16.]  Dr. Bagner found that plaintiff's "affect [was] mood congruent" with her report of feeling "depressed."  [AR at 514.]  Dr. Bagner further found that plaintiff's speech was "intact and coherent but mildly decreased in rate, rhythm and volume."  [AR at 514-15.]  Dr. Bagner diagnosed plaintiff with a depressive order, not otherwise specified, and concluded that plaintiff would have no limitations interacting with supervisors, peers or the public; zero to mild limitations maintaining concentration and attention and completing simple tasks; mild limitations completing complex tasks; and mild to moderate limitations handling normal stresses at work and completing a normal workweek without interruption.  [AR at 516.]

On November 30, 2009, Dr. Gale J. Shuler completed a psychological evaluation of plaintiff, during which she performed a mental status examination of plaintiff, as well as a variety of other tests, including a Beck Depression Inventory, a Beck Anxiety Inventory, and a Millon Clinical Multiaxial Inventory.  [AR at 558-69.]  Dr. Shuler found that the testing suggested "moderate levels of subjectively experienced depression," indicated "mild levels of mood disturbance," and "reflect a[] depressed individual who experiences little pleasure in her life."  [AR at 566-67.]  She further found that plaintiff's responses on the direct questions in the Beck Anxiety Inventory "regarding

distress suggest an under-reporting of symptoms ... ." [AR at 566.]  Dr. Shuler diagnosed plaintiff with major depressive disorder of moderate intensity, anxiety disorder with panic attacks, and a pain disorder associated with both psychological factors and a general medical condition.  [AR at 568.]  In a mental assessment she performed on the same day, Dr. Shuler opined that plaintiff would have moderate to marked limitations in carrying out detailed instructions, interacting appropriately with the general public, and accepting instructions and responding appropriately to criticism from supervisors.  [AR at 570-73.]  Dr. Shuler further opined that plaintiff would have marked limitations in maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerances, completing a normal workday and workweek without interruptions from psychologically-based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, and responding appropriately to changes in the work setting. [AR at 571.]

In the ALJ's decision, he adopted the opinion of non-examining physician Dr. P.M. Balson[3] that plaintiff has no restriction in activities of daily living; that she has no difficulties in maintaining social functioning; that there is insufficient evidence of any episodes of decompensation; and that she has only mild difficulties in maintaining concentration, persistence or pace.  [AR at 18-19, 530-40.]  The ALJ therefore adopted Dr. Balson's opinion that plaintiff does not have a severe mental impairment.  [AR at 19, 530.]  At the same time, the ALJ rejected Dr. Bagner's and Dr. Shuler's opinions concerning plaintiff's limitations.

The ALJ used Dr. Bagner's opinion to support the ALJ's conclusion that plaintiff does not have a severe mental impairment, stating that "Dr. Bagner found that [plaintiff] takes psychiatric medications with success and would have mainly mild functional limitations."  [AR at 19.]  However, Dr. Bagner's complete statement concerning the efficacy of plaintiff's medications was

---

[3]   The ALJ erroneously attributes the psychiatric review technique form he cites in the record (in which the non-examining physician found that plaintiff does not have a severe mental impairment) to "Dr. P.N. Ligot" [see AR at 18-19]; that form was actually completed by Dr. P.M. Balson.  [AR at 530-40.]

that plaintiff "takes psychiatric medications with *moderate* success." Moreover, while it is true that Dr. Bagner found plaintiff "would have mainly mild functional limitations," he <u>also</u> found that she would have *mild to moderate* limitations handling normal stresses at work and completing a normal workweek without interruption. [AR at 516.] An ALJ may not mischaracterize or ignore competent evidence in the record to justify his own conclusions. See <u>Day v. Weinberger</u>, 522 F.2d 1154, 1156 (9th Cir. 1975) (An ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence."); <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083 (10th Cir. 2004) (citing <u>Switzer v. Heckler</u>, 742 F.2d 382, 385-86 (7th Cir. 1984)) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."). The ALJ relied on his characterization that Dr. Bagner found plaintiff "would have mainly mild functional limitations" to conclude that plaintiff does not have a severe mental impairment. Under the Commissioner's regulations, however, Dr. Bagner's opinion that plaintiff would have *mild to moderate* limitations handling normal stresses at work and completing a normal workweek without interruption supports plaintiff's assertion that she has a severe mental impairment. See 20 C.F.R. §§ 404.1520a, 1521. As the ALJ did not give a specific and legitimate reason to reject Dr. Bagner's opinion in this regard, substantial evidence does not support the ALJ's conclusion that plaintiff does not have a severe mental impairment.

As to Dr. Shuler, the ALJ rejected her diagnoses (major depressive disorder of moderate intensity, anxiety disorder with panic attacks, and a pain disorder associated with both psychological factors and a general medical condition), stating "these findings are not consistent with her medical findings, which indicated only mild mood disturbance." As discussed <u>supra</u>, an ALJ may not ignore evidence in the record to justify his own conclusions. Dr. Shuler performed a variety of tests on plaintiff and her finding that the testing indicated "mild levels of mood disturbance" was not the *only* finding she relied on to render her diagnoses. See <u>Reddick</u>, 157 F.3d at 722-23 (It is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports."); <u>Day</u>, 522 F.2d at 1156; <u>Robinson</u>, 366 F.3d at 1083. Rather, Dr. Shuler also rendered these diagnoses based on testing she administered that suggested "moderate levels of subjectively experienced

1   depression," "reflect[ed] a[] depressed individual who experiences little pleasure in her life," and

2   "suggest[ed] an under-reporting of symptoms [by plaintiff] ... ." [AR at 566-67.] In addition, the

3   ALJ rejected Dr. Shuler's conclusions because he found that she "relied heavily on [plaintiff's]

4   subjective complaints, which are not backed by any longitudinal evidence." [AR at 19.] However,

5   as discussed infra, the ALJ committed error by discounting plaintiff's credibility, and furthermore,

6   an ALJ does not provide a legitimate reason to reject the opinion of an examining physician "by

7   questioning the credibility of the patient's complaints where the doctor does not discredit those

8   complaints and supports his ultimate opinion with his own observations." See Ryan v. Comm'r

9   of Social Sec. Admin., 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (citing Edlund v. Massanari, 253

10  F.3d 1152, 1159 (9th Cir. 2001)). Dr. Shuler rendered her ultimate opinion based both on

11  plaintiff's subjective complaints and her detailed examination of plaintiff, and thus this was not a

12  proper reason to reject Dr. Shuler's opinion. As such, the ALJ failed to give specific and legitimate

13  reasons to reject Dr. Shuler's opinion that plaintiff has the limitations Dr. Shuler indicated in her

14  December 5, 2009, mental assessment -- which included more than "mild" limitations in a variety

15  of areas, and thus also support plaintiff's contention that she has a severe mental impairment.

16  See 20 C.F.R. §§ 404.1520a, 1521.

17        For the reasons set forth above, the ALJ's determination that plaintiff does not have a

18  severe mental impairment is not supported by substantial evidence.[4]

19  /

20  /

21

22        [4]   Plaintiff further contends that the ALJ erred by failing to consider the opinion of Tricia K.

23  Buttkus -- a licensed clinical social worker who has treated plaintiff for depression -- that plaintiff
    cannot work due to depression [AR at 593-94]. [JS at 3-4, 8-9.] While licensed clinical social

24  workers are not considered "acceptable medical sources" under the Commissioner's regulations
    (see 20 C.F.R. § 404.1513(a)), they are nevertheless "other sources" of evidence (20 C.F.R. §

25  404.1513(d)) whose opinions cannot be rejected without providing reasons that are germane to
    each social worker. See Turner v. Comm'r of Social Sec. Admin., 613 F.3d 1217, 1224 (9th Cir.

26  2010). As the ALJ did not discuss Ms. Buttkus' opinion at all [see AR at 18-24], he failed to
    provide any reason germane to her to reject her opinion. The ALJ erred by not considering Ms.

27  Buttkus' opinion in determining whether plaintiff has a severe mental impairment. See Turner, 613

28  F.3d at 1224.

2.      *Pulmonic Insufficiency and Plantar Fasciitis*

Plaintiff also contends that the ALJ erred in concluding that plaintiff's pulmonic insufficiency and plantar fasciitis are not severe impairments.  [JS at 33-34.]

The ALJ concluded that plaintiff's "status post surgery to pulmonary artery" is a non-severe impairment because he found that "[t]here is no evidence of record that [plaintiff's] ... status post surgery to pulmonary artery significantly limits [her] ability to perform basic work activities."  [AR at 19.]   Contrary to this representation, however, a November 3, 2008, echocardiogram and Doppler study reflected "[m]oderate to marked pulmonic insufficiency" [AR at 370], and a May 20, 2010, treating note states that plaintiff has "[s]tatus post pulmonary valve surgery with moderate to severe pulmonary regurgitation."  [AR at 589.]  Further, plaintiff testified at her administrative hearing that she sees a cardiologist regularly because she has "a lot of shortness of breath," and does not "have the stamina that [she] should have because of [her] heart."[5]  [AR at 40.]  In light of this evidence in the record, substantial evidence does not support the ALJ's conclusion that plaintiff's pulmonic insufficiency has no more than a minimal effect on her ability to perform basic work activities.  See Corrao, 20 F.3d at 949.

As for plaintiff's plantar fasciitis, the ALJ did not discuss this impairment.  [See AR at 18-19.] However, the record reflects that on June 1, 2009, Dr. Jiun Rong Peng performed a musculoskeletal examination of plaintiff's legs, ankles, and feet, diagnosed her with plantar fasciitis in both feet, and instructed her to "modify weight bearing and walking activities whenever possible."  [AR at 423-24.]  As this evidence suggests that plaintiff's plantar fasciitis may have more than a minimal effect on her ability to perform basic work functions, the ALJ erred by not discussing whether this impairment is severe.

Accordingly, remand is warranted for the ALJ to properly consider whether plaintiff has a severe mental impairment, and whether her alleged impairments of pulmonic insufficiency and plantar fasciitis are severe.

---

[5]    As discussed infra, the ALJ improperly rejected plaintiff's subjective symptom testimony.

**B.    TREATING PHYSICIAN OPINIONS**

Plaintiff contends that the ALJ improperly rejected the opinions of her treating physicians. [JS at 26-28, 32-33.]

Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant.  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen, 80 F.3d at 1285.  As with the opinion of an examining physician, where a treating physician's opinion does not contradict other medical evidence, the ALJ must provide clear and convincing reasons to discount it.  Lester, 81 F.3d at 830; see also Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).  Where a treating physician's opinion conflicts with other medical evidence, the ALJ must set forth specific and legitimate reasons supported by substantial evidence in the record to reject it.  Lester, 81 F.3d at 830; see also McAllister v. Sullivan, 888 F.2d 599, 602-03 (9th Cir. 1989).

Dr. James J. Burris saw plaintiff between three to four times a year from May 2006 to August 2010, during which he treated her for back pain, sciatic pain, radiculopathy, and fibromyalgia; ordered x-rays; diagnosed her with degenerative disc disease and fibromyalgia; and prescribed her with medications.  [AR at 386-422, 545-52, 577-81.]  On October 19, 2009, Dr. Burris completed a medical evaluation form concerning plaintiff, in which he opined that plaintiff has or would have the following limitations as a result of her fibromyalgia and chronic lumbar pain: her pain and fatigue, or the side effects of medications, would interfere with her ability to concentrate or remain alert at any job; her body aches and the pain in her shoulders, knees, and feet, would affect her concentration level for more than two-thirds of an 8-hour day; her condition would interfere with her ability to keep her neck in a constant position (e.g., looking at a computer screen or looking down at a desk); she could not sit, stand, or alternate between sitting and standing for at least 6 hours out of an 8-hour day on a sustained daily basis; she would need to rest for 4 to 6 hours out of an 8-hour day; she could only lift and carry up to 5 pounds frequently during an 8-hour workday on a sustained daily basis; and she would miss work, on average, more than three times a month.  [AR at 545-47.]

Dr. Jeffrey E. Deckey performed a right L5-S1 microdiscectomy on plaintiff on February 23, 2009, before which he saw and examined plaintiff twice, and after which he saw and examined plaintiff three times.  [AR at 425-64, 541-44, 574-76.]  Based on a physical examination he performed on February 6, 2009 -- i.e., prior to her surgery -- Dr. Deckey found that plaintiff had "limited lumbar range of motion" and "point tenderness along the lumbosacral midline."  He diagnosed her with right L5-S1 extruded disc herniation, degenerative disc disease at L4-5 and L5-S1, and right leg radiculopathy.  [AR at 429-31.]  During a follow-up visit on September 24, 2009 -- i.e., seven months after her surgery -- Dr. Deckey examined plaintiff and found "limitation in range of motion" and "diffuse tenderness."  He also reviewed x-rays of plaintiff's lumbar spine, which he found "demonstrate isolated degeneration at L5-S1."  Dr. Deckey diagnosed plaintiff with fibromyalgia, degenerative disc disease, and back pain.  [AR at 576.]  On the same day, Dr. Deckey completed a medical evaluation form concerning plaintiff, in which he opined that due to plaintiff's lumbar spine problems: plaintiff's pain and fatigue, or the side effects of medications, would interfere with her ability to concentrate or remain alert at any job; plaintiff's condition would affect her concentration level for more than two-thirds of an 8-hour day; her condition would interfere with her ability to keep her neck in a constant position (e.g., looking at a computer screen or looking down at a desk); plaintiff could not sit, stand, or alternate between sitting and standing for at least 6 hours out of an 8-hour day on a sustained daily basis; she would sometimes need to take unscheduled breaks to rest at unpredictable intervals during an 8-hour workday; she could only lift and carry up to 5 pounds frequently during an 8-hour workday on a sustained daily basis; and she would miss work, on average, more than three times a month.  [AR at 541-43.]

The ALJ rejected Dr. Burris' and Dr. Deckey's opinions concerning the degree of plaintiff's limitations because he found that: (1) "[their] opinions sharply contrast with the other evidence of record, rendering it less persuasive"; (2) "there is limited support in their own medical findings for their extremely restrictive opinions"; and (3) "these opinions appear to have relied quite heavily on [plaintiff's] subjective report of symptoms and limitations and exhibit sympathy to [plaintiff] during her disability application process."  [AR at 24.]  Instead, the ALJ gave "substantial weight" to the opinion of examining physician Dr. Concepcion Enriquez, who found that plaintiff has an

13

RFC for light work [AR at 517-21]; "significant weight" to the opinion of non-examining physician Dr. P.N. Ligot, who found that plaintiff has an RFC for modified light work [AR at 522-27]; and "great weight" to the opinion of non-examining medical expert Dr. Sami Nafoosi, who testified that plaintiff has an RFC for modified light work [AR at 54-56].  [AR at 23-24.]

      With regard to the ALJ's first reason for rejecting Dr. Burris' and Dr. Deckey's opinions -- that they "sharply contrast with the other evidence of record" -- an ALJ may not properly reject a treating physician's opinion by merely referencing the contrary findings of other physicians.  Even when contradicted, the opinions of treating physicians are still entitled to deference, and the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting them. See Orn, 495 F.3d at 632-33; see also Rollins, 261 F.3d at 856 ("The ALJ may not reject the opinion of a treating physician, even if it is contradicted by the opinions of other doctors, without providing 'specific and legitimate reasons' supported by substantial evidence in the record.") (internal citation omitted); Hostrawser v. Astrue, 364 Fed. Appx. 373, 376-77 (9th Cir. 2010) (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3) (ALJ erred in affording nontreating physicians' opinions controlling weight over the treating physicians' opinions, where the ALJ did not provide a thorough summary of the conflicting clinical evidence and his interpretations thereof with an explanation as to why his interpretations of the evidence, rather than those of the treating physicians, were correct); SSR 96-2p.  Moreover, with regard to the opinions of Dr. Ligot and Dr. Nafoosi, the opinion of a non-examining physician may only serve as a basis to reject the opinion of a treating physician where the non-examining physician's opinion is consistent with other independent evidence in the record.  See Ryan, 528 F.3d at 1202 ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician.") (internal citation and quotations omitted).  Here, the ALJ's summary of the findings of Dr. Enriquez, Dr. Ligot, and Dr. Nafoosi, followed by his evaluation that Dr. Burris' and Dr. Deckey's opinions "sharply contrast with the other evidence of record," does not exempt him from providing specific and legitimate reasons to reject the opinions of Dr. Burris and Dr. Deckey.  However, none of the ALJ's other reasons for rejecting Dr. Burris' and Dr. Deckey's opinions meets this standard.

The second reason the ALJ gave for rejecting these treating physicians' opinions was that "there is limited support in their own medical findings for their extremely restrictive opinions" that plaintiff "must rest a significant portion of the day and cannot lift more than five pounds or sit, stand, or walk for six hours of an eight-hour workday." [AR at 24.]  However, the ALJ does not identify *how* Dr. Burris' and Dr. Deckey's diagnoses of fibromyalgia and degenerative disc disease and their findings underlying those diagnoses fail to support their opinions concerning the above limitations.  See McAllister, 888 F.2d at 602 (finding that rejecting the treating physician's opinion on the ground that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed"); see also, e.g., Payne v. Astrue, 2009 WL 176071, at *6 (C.D. Cal. Jan. 23, 2009) (finding inadequate an ALJ's conclusory rejection of a treating physician's opinion as inconsistent with the medical treatment, where the ALJ did not specify how the treatment record was inconsistent with the physician's opinion and state his interpretation thereof).  Thus, the ALJ's second reason to reject Dr. Burris' and Dr. Deckey's opinions concerning plaintiff's limitations does not reach the level of specificity required to reject the opinion of a treating physician.  See Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the [treating] doctors', are correct.") (footnote omitted).

Third, while the ALJ stated that Dr. Burris' and Dr. Deckey's opinions "appear to have relied quite heavily on [plaintiff's] subjective report of symptoms and limitations," an ALJ does not provide a legitimate reason to reject the opinion of a treating physician "by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations," as the Court noted supra in the context of plaintiff's examining physicians.  See Ryan, 528 F.3d at 1199-1200.  Here, Dr. Burris' opinion was based not only on plaintiff's subjective complaints, but also on his personal observations of plaintiff at

1    least three or four times a year over a period of more than four years, and his regular monitoring

2    of plaintiff's medication regimen.  Similarly, Dr. Deckey's opinion was based on, in addition to

3    plaintiff's complaints, his physical examinations of plaintiff both before and after her surgery, his

4    knowledge of plaintiff's back problems as a result of performing plaintiff's microdiscectomy, and

5    his comparison of plaintiff's condition pre-surgery and post-surgery.  The opinions of treating

6    physicians are generally given more weight than the opinions of other physicians because treating

7    physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal

8    picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the

9    medical evidence that cannot be obtained from the objective medical findings alone or from reports

10   of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R.

11   §§ 404.1527(c)(2), 416.927(c)(2); see id. at §§ 404.1527(c)(2)(i), (ii), 416.927(c)(2)(i), (ii) (weight

12   accorded to a treating physician's opinion dependent on length of the treatment relationship,

13   frequency of visits, and nature and extent of treatment received).  Based on the length of Dr.

14   Burris' and Dr. Deckey's treatment relationships and their experience with plaintiff, these

15   physicians had the broadest range of knowledge regarding plaintiff's condition, which is supported

16   by the treatment records.  See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also Lester, 81

17   F.3d at 833 ("The treating physician's continuing relationship with the claimant makes him

18   especially qualified to evaluate reports from examining doctors, to integrate the medical

19   information they provide, and to form an overall conclusion as to functional capacities and

20   limitations, as well as to prescribe or approve the overall course of treatment.").  As in Ryan, 528

21   F.3d 1194, "[t]here is nothing in the record [here] to suggest that [Dr. Burris and Dr. Deckey]

22   disbelieved [plaintiff's] description of her symptoms, or that [either doctor] relied on those

23   descriptions more heavily than his own clinical observations in reaching the conclusion that

24   [plaintiff is] incapable of maintaining a regular work schedule."  See Ryan, 528 F.3d at 1200.

25           Finally, while the ALJ stated that Dr. Burris and Dr. Deckey "exhibit sympathy to [plaintiff]

26   during her disability application process," such sympathy by itself, even if it exists, is not evidence

27   of any actual impropriety on the part of either doctor.  See Lester, 81 F.3d at 832 (quoting Ratto

28   v. Sec'y, Dept. of Health and Human Servs., 839 F. Supp. 1415, 1426 (D. Or. 1993)) ("The

1  Secretary may not assume that doctors routinely lie in order to help their patients collect disability

2  benefits."); <u>see also</u> <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1465 (9th Cir. 1996) (citing <u>Saelee v.</u>

3  <u>Chater</u>, 94 F.3d 520, 523 (9th Cir. 1996), <u>cert. denied</u>, 519 U.S. 1113 (1997)) (the source of report

4  is a factor that justifies rejection only if there is evidence of actual impropriety or no medical basis

5  for opinion).   Moroever, the record contains no evidence that either Dr. Burris or Dr. Deckey

6  embellished his assessments of plaintiff's limitations in order to assist her with her Social Security

7  benefits claim.   <u>See</u> <u>Reddick</u>, 157 F.3d at 725-26 (ALJ erred in assuming that the treating

8  physician's opinion was less credible because his job was to be supportive of the patient).   Thus,

9  this also was not a proper ground to reject their opinions.

10      The ALJ did not provide specific and legitimate reasons supported by substantial evidence

11  to reject the opinions of Dr. Burris and Dr. Deckey.   Remand is warranted on this issue.

12

13  **C.    PLAINTIFF'S SUBJECTIVE SYMPTOM TESTIMONY**

14      Plaintiff contends that the ALJ failed to give proper reasons to reject her subjective

15  symptom testimony.   [JS at 15-19, 25-26.]

16      "To determine whether a claimant's testimony regarding subjective pain or symptoms is

17  credible, an ALJ must engage in a two-step analysis."   <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028,

18  1035-36 (9th Cir. 2007).   "First, the ALJ must determine whether the claimant has presented

19  objective medical evidence of an underlying impairment 'which could reasonably be expected to

20  produce the pain or other symptoms alleged.'"   <u>Id.</u> (quoting <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344

21  (9th Cir. 1991) (en banc)).   Second, if the claimant meets the first test, the ALJ may only reject the

22  claimant's testimony about the severity of her symptoms upon (1) finding evidence affirmatively

23  suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons

24  for doing so.   <u>See</u> <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1999); <u>see also</u> <u>Lingenfelter</u>, 504

25  F.3d at 1036; <u>Benton v. Barnhart</u>, 331 F.3d 1030, 1040 (9th Cir. 2003).   The factors to be

26  considered in weighing a claimant's credibility include: (1) the claimant's reputation for

27  truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's

28  testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and

(5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).  If properly supported, the ALJ's credibility determination is entitled to "great deference."  See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

At her administrative hearing, plaintiff testified that: she stopped working due to the pain in her neck, shoulders, and hand; she has pain in her neck "all the time"; the pain in her lower back is between a 5 and an 8 on a scale from 1 to 10, with 10 being the worst; her back surgery "eased some of the pain, ... [b]ut ... didn't take it away"; she has "a numbing pain" that goes down her right leg "all the time"; she has problems with her feet due to plantar fasciitis; she can only sit for 10 to 15 minutes until she has to get up; she can only stand for 15 minutes at a time and walk for half a mile at a time; she cannot lift more than 5 pounds or above shoulder level with her right arm; she has numbness in her wrist and fingers; she drops things and is unable to open jars; she cannot look up and down without becoming dizzy; she has "a lot of shortness of breath" and does not have the stamina that she should "because of [her] heart"; she has to lie down for three to four hours every day; she has "good [days] and bad days," and for the last several years has had at least two days a week when she "[does not] even get out of bed"; she can no longer get in and out of the bathtub; she only goes grocery shopping with her husband; she does not go to the movies, the theater, or shows because it would require "sitting for too long"; she tries to attend church once a week for the "half an hour service"; and she "[does not] feel like being around people sometimes" due to her depression.  [AR at 36-54.]  Plaintiff reported similar limitations in a pain questionnaire and a function report she completed on June 22, 2009.  [See AR at 172-82.]

At step one of the two-step credibility analysis, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  [AR at 21.]  The ALJ nevertheless concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC findings for plaintiff]."  [AR at 21-22]  Thus, at step two, as the

1  record contains no evidence of malingering by plaintiff,[6] the ALJ was required to offer "specific,

2  clear and convincing reasons" for rejecting her subjective symptom testimony.  See Lingenfelter,

3  504 F.3d at 1036.  "General findings are insufficient; rather, the ALJ must identify what testimony

4  is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157

5  F.3d 715, 722 (9th Cir. 1998) (quoting Lester, 81 F.3d at 834); see also Dodrill, 12 F.3d at 918.

6       The ALJ rejected plaintiff's credibility because he found that her "longitudinal medical

7  history does not support limitations to the extent that [she] has alleged, nor does it support the

8  pain and symptoms alleged by [her]." [AR at 22.]  He further stated that "consideration of the

9  factors described in 20 C.F.R. [§] 404.1529(c)(3) and Social Security Ruling[7] 96-7p also leads to

10  a conclusion that [plaintiff's] allegations of disabling symptoms and limitations cannot be

11  accepted." [AR at 23 (footnote added).]  The ALJ further explained that:

12          No single factor mentioned is conclusive regarding [plaintiff's]
           residual functional capacity, but when viewed in combination, and in
13          conjunction with the medical history and examination findings, they
           suggest that [plaintiff] is not as limited as alleged.   Notably, this
14          determination is not based on a lack of objective findings but rather on
           an analysis of the medical history and findings viewed in conjunction
15          with [plaintiff's] own description of his [sic] activities and the other
           credibility factors as cited above.

16

17  [Id.]

18       First, the ALJ's finding that plaintiff's "longitudinal medical history does not support

19  limitations to the extent that [she] has alleged," or "the pain and symptoms alleged by [her]," was

20  not a legally adequate reason to reject plaintiff's subjective symptom testimony.  Once a claimant

21  has produced objective medical evidence of an impairment or impairments, she "need not produce

22  objective medical evidence of the pain or fatigue itself, or the severity thereof." Smolen, 80 F.3d

23  at 1282; see Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995) ("once an impairment is

24

25  _____

    [6]   The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest
    plaintiff was doing so.

26
27  [7]   Social Security Rulings do not have the force of law.   Nevertheless, they "constitute
    Social Security Administration interpretations of the statute it administers and of its own
    regulations," and are given deference "unless they are plainly erroneous or inconsistent with the
28  Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1    medically established, the ALJ cannot require medical support to prove the severity of the pain").

2    The case law holding that "[a] claimant need not produce objective medical evidence of the pain

3    or fatigue itself, or the severity thereof," reflects the rationale that "pain testimony may establish

4    greater limitations than can medical evidence alone." Smolen, 80 F.3d at 1282 (internal citations

5    omitted); Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Social Security Ruling 96-

6    7p). The Ninth Circuit has noted that "the nature of pain and other such symptoms" is "highly

7    subjective and idiosyncratic" such that "[t]he amount of pain [or fatigue] caused by a given physical

8    impairment can vary greatly from individual to individual." Smolen, 80 F.3d at 1282 (internal

9    citations omitted). While the ALJ later attempted to frame his rejection of plaintiff's subjective

10   symptom testimony as "not based on a lack of objective findings but rather on an analysis of the

11   medical history and findings viewed in conjunction with [plaintiff's] own description of [her]

12   activities," the Court notes that a comparison of plaintiff's pain testimony with her medical history

13   would only detract from her credibility if there was a *lack of medical evidence* that supported her

14   testimony. The ALJ cannot circumvent the law on this issue by attempting to recharacterize his

15   first reason for rejecting plaintiff's pain testimony. Moreover, while an ALJ may consider whether

16   a lack of objective medical evidence supports the degree of limitation, this "cannot form the sole

17   basis for discounting pain testimony." Burch, 400 F.3d at 681. Here, none of the ALJ's other

18   purported reasons (see infra) for rejecting plaintiff's credibility is legally adequate. Thus, even if

19   his characterization of the medical evidence were supported by substantial evidence, he cannot

20   rely solely upon this rationale to discount plaintiff's subjective symptom testimony.

21        Next, the ALJ's general reference to "the factors described in 20 C.F.R. [§] 404.1529(c)(3)

22   and Social Security Ruling 96-7p" does not specifically identify *which* of those factors the ALJ

23   relied on to find plaintiff not credible. As such, it is not a clear and convincing reason to reject

24   plaintiff's pain testimony. See Reddick, 157 F.3d at 722; Dodrill, 12 F.3d at 918.

25        Finally, while the Commissioner contends that the ALJ's rejection of plaintiff's credibility was

26   proper for other reasons, or attempts to elaborate on reasons that the ALJ did not specifically

27   identify [see JS at 20-24], the ALJ did not explicitly provide any of those reasons to discount

28   plaintiff's credibility, and "[l]ong-standing principles of administrative law require [this Court] to

20

1  review the ALJ's decision based on the reasoning and factual findings offered by the ALJ -- not

2  *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray

3  v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing SEC v. Chenery

4  Corp., 332 U.S. 194, 196 (1947)).

5      The ALJ did not provide any legally adequate reason to reject plaintiff's credibility.  Remand

6  is warranted on this issue.

7

8                                            **VI.**

9                        **REMAND FOR FURTHER PROCEEDINGS**

10     As a general rule, remand is warranted where additional administrative proceedings could

11  remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th

12  Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  In

13  this case, remand is appropriate to properly evaluate: (1) the opinions of Dr. Bagner, Dr. Shuler,

14  and Ms. Buttkus to determine whether plaintiff has a severe mental impairment; (2) whether

15  plaintiff's impairments of pulmonic insufficiency and plantar fasciitis are "severe"; (3) the opinions

16  of Dr. Burris and Dr. Deckey; and (4) plaintiff's subjective symptom testimony.   The ALJ is

17  instructed to take whatever further action is deemed appropriate and consistent with this decision.

18     Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;

19  (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant

20  for further proceedings consistent with this Memorandum Opinion.

21     **This Memorandum Opinion and Order is not intended for publication, nor is it**

22  **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

23

24  DATED: March 29, 2013

25                                            PAUL L. ABRAMS
                                        UNITED STATES MAGISTRATE JUDGE

26

27

28

21